USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 8/6/10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x
CHEN XIANG,                                          :
                                                     :        **ORDER DENYING**
                           Petitioner,               :        **MOTION FOR WRIT OF**
                                                     :        **HABEAS CORPUS**
             -against-                               :
                                                     :        09 Civ. 7579 (AKH)
UNITED STATES OF AMERICA,                            :
                                                     :
                           Respondent.               :
-------------------------------------------------------------- x

ALVIN K. HELLERSTEIN, U.S.D.J.:

             Petitioner Chen Xiang, proceeding *pro se*, petitions for a writ of habeas

corpus pursuant to 28 U.S.C. § 2255. Xiang argues that the evidence presented against him

in his federal trial was legally insufficient, that the trial court gave erroneous jury

instructions, and that he was improperly sentenced to mandatory consecutive sentences.

For the reasons stated below, the petition is denied.

## I.    BACKGROUND

             Between July 2001 and January 2002, petitioner Chen Xiang and others

committed a series of armed robberies targeting illegal gambling parlors in the Chinatown

neighborhood of New York City. The criminal activities at issue began on July 23, 2001,

when a member of Xiang's group phoned Chen Tin Hua, a "shareholder" of an illegal

gambling parlor at 75 Eldridge Street, and demanded $10,000. The group, with each

member carrying a firearm, arrived later that day to collect on their demand. Hua told

them he did not have any money to give them. In response, the group beat Hua with the

butts of their weapons and fled the scene empty-handed.

             Two months later, on September 30, 2001, Xiang and three others targeted

another illegal gambling parlor. They arrived at 21 Eldridge Street, again carrying

1

firearms. Once inside, the group drew their weapons, stated their intention to rob the parlor and its customers, and lined the customers up against a wall. Xiang and another co-conspirator held the customers at gunpoint while the others stole more than $10,000.

On November 21, 2001, after attempting two robberies earlier that day in Chinatown, the group successfully robbed an illegal gambling parlor that operated out of a flower shop at 109 East Broadway. With weapons drawn, the group demanded that everyone present turnover their money and valuables. The group stole a total of $3,000 from the customers and the flower shop.

Finally, on January 23, 2002, the group, again carrying firearms, robbed an illegal gambling parlor located behind a barber shop at 85 Allen Street. To gain entry, the group beat a doorman with the butts of their weapons, entered with their guns drawn, and stole approximately $10,000 from the customers and parlor.

Following an investigation, Xiang was arrested by an F.B.I. SWAT team at his apartment in Queens on February 28, 2002. The F.B.I. recovered a shotgun and three handguns from the apartment. Xiang was charged in federal court with three counts of robbery (hereinafter "the Hobbs Act robberies") and one count of extortion in violation of 18 U.S.C. § 2 and § 1951, three counts of conspiring to commit robbery and one count of conspiring to commit extortion in violation of 18 U.S.C. § 1951, and four counts of carrying and possessing a firearm during and in relation to the charged robberies and extortion in violation of 18 U.S.C. § 924(c). He went to trial and, on May 29, 2003, a jury found him guilty of all charges. The district court sentenced Xiang to a 1,054-month term of imprisonment: 70 months for the underlying robbery, extortion, and conspiracy to commit robbery and extortion convictions, and 984 months for the four § 924(c) convictions.

Xiang appealed, and in 2005 the Second Circuit reversed his conviction for extortion, conspiracy to commit extortion, and the § 924(c) conviction based on the extortion, and affirmed his conviction on all other counts (hereinafter "2005 direct appeal"). Zhou v. United States, 428 F.3d 361 (2d Cir. 2005). The Second Circuit remanded, and instructed the district court to resentence Xiang to reflect only those convictions that were affirmed on appeal. The district court resentenced Xiang to a 754-month term of imprisonment: 70 months for the remaining robbery and conspiracy to commit robbery convictions, and 684 months for the three remaining § 924(c) convictions.

Xiang again appealed to the Second Circuit, arguing that he was improperly sentenced to mandatory consecutive sentences, that his sentence was unreasonable, and that appellate counsel on his 2005 direct appeal was ineffective for failing to challenge the sufficiency of the evidence produced at trial. The Second Circuit denied the appeal in a summary order (hereinafter "2008 direct appeal"), reasoning that the mandatory consecutive sentences were proper pursuant to the Supreme Court's decision in Deal v. United States, 508 U.S. 129 (1993), that the sentence was not unreasonable because it was less than the statutory maximum and not substantively unreasonable, and that appellate counsel was not ineffective for failing to challenge the sufficiency of the evidence because "[a]t trial, the government provided evidence that each of the three robberies affected, or had the potential to affect, interstate commerce." United States v. Zhou, 268 F. App'x 139, 140-41 (2d Cir. 2008). On October 6, 2008, the Supreme Court of the United States denied Xiang's petition for a writ of certiorari. Xiang v. United States, 129 S. Ct. 121 (2008). On August 31, 2009, Xiang timely filed this motion for a writ of habeas corpus.

3

## II.    STANDARD OF REVIEW

Under 28 U.S.C. § 2255, a prisoner in federal custody may petition the sentencing court to vacate, set aside, or correct a sentence. A properly filed motion must allege that (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the sentencing court was without jurisdiction to impose such a sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. § 2255; see Thai v. United States, 391 F.3d 491, 493 (2d Cir. 2005). Collateral relief is available only for a constitutional error "that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'" United States v. Bokun, 73 F.3d 8, 12 (2d Cir. 1995) (quoting Hill v. United States, 368 U.S. 424, 428 (1962)).

A § 2255 motion must set forth "the facts supporting each ground" for relief. 28 U.S.C. § 2255(b). A prisoner is entitled to a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." § 2255; see also Pham v. United States, 317 F.3d 178, 184-85 (2d Cir. 2003).

It is well settled that "[a] § 2255 motion may not relitigate issues that were raised and considered on direct appeal." United States v. Perez, 129 F.3d 255, 260 (2d Cir. 1997). After an issue is considered on direct appeal, it may be reconsidered in a § 2255 motion "only where there has been an intervening change in the law and the new law would have exonerated a defendant had it been in force before the conviction was affirmed on direct appeal." Chin v. United States, 622 F.2d 1090, 1092 (2d Cir. 1980).

A claim that is not raised on direct appeal is procedurally barred in a habeas petition. See Zhang v. United States, 506 F.3d 162, 166 (2d Cir. 2007). "Where a defendant

4

has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'" Bousley v. United States, 523 U.S. 614, 622 (1998) (internal citations omitted).

## III.   DISCUSSION

### A.   Sufficiency of the Evidence

Xiang alleges the Government failed to adduce evidence at trial that the Hobbs Act robberies affected interstate commerce, and that as a result, the evidence was legally insufficient to support his robbery convictions. Xiang, however, raised this issue in his 2008 direct appeal. Specifically, he argued that his appellate counsel was ineffective for failing to challenge the interstate nexus. The Second Circuit found that "[a]t trial, the government provided evidence that each of the three robberies affected, or had the potential to affect, interstate commerce," and denied Xiang's ineffectiveness claim. Zhou, 268 F. App'x at 141. Xiang, having litigated the issue on appeal, is barred from relitigating the issue in this habeas petition. Perez, 129 F.3d at 260.

Regardless of the procedural bar, Xiang's claim fails on the merits. The evidence adduced at trial was legally sufficient to support Xiang's convictions. A petitioner has a "very heavy burden [when] challenging the sufficiency of the evidence underlying his conviction." Knapp v. Leonardo, 46 F.3d 170, 178 (2d Cir. 1995) (internal quotations omitted). When reviewing the sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a

reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). This heavy burden
preserves "the factfinder's role as weigher of the evidence." Id.

It is settled law that "[t]he jurisdictional requirement of the Hobbs Act may
be satisfied by a showing of a very slight effect on interstate commerce." United States v.
Elias, 285 F.3d 183, 188 (2d Cir. 2002) (internal quotations omitted). "Even a potential or
subtle effect on commerce will suffice." Id. At trial, the Government adduced evidence
that each of the three Hobbs Act robberies affected, or had the potential to affect, interstate
commerce. With respect to the robbery at 21 Eldridge Street, the government adduced
evidence that at least one individual traveled from another state to gamble at that parlor.
United States v. Needham, 604 F.3d 673, 682 (2d Cir. 2010) ("In Hobbs Act cases, an
interstate nexus may be demonstrated where the government introduces evidence that the
robbery was of a business (legal or illegal) that . . . serves out-of-state customers . . . .").
With respect to the robbery at 109 East Broadway, the government adduced evidence that
the gambling parlor served food and drink to its customers in a flower shop—all items that
move in interstate commerce. United States v. Elias, 285 F.3d 183, 189 (2d Cir. 2002) ("[A]
robbery of a local distribution or retail enterprise may be said to affect interstate
commerce if the robbery impairs the ability of the local enterprise to acquire—whether
from out-of-state or in-state suppliers—goods originating out-of-state."); see United States
v. Ortega, 71 F. App'x 92, 94 (2d Cir. 2003) ("[O]nly a de minimus showing is required to
establish the interstate nexus required for Hobbs Act jurisdiction."). Finally, with respect
to the robbery at 85 Allen Street, the government adduced evidence that a "shareholder" of
the gambling parlor mailed income generated by the parlor to his home in China, United
States v. Mejia, 545 F.3d 179, 203 (2d Cir. 2008) ("Use of an instrumentality of commerce,

6

such as telephone lines, is also generally viewed as an activity that affects interstate

commerce."), and that the gambling parlor purchased food and drinks. Elias, 285 F.3d at

189. A rational jury, on the basis of this evidence, could have concluded that the robberies

affected, or had the potential to affect, interstate commerce. Id. at 188. Xiang has thus

failed to demonstrate that his verdict was imposed in violation of the Constitution or laws

of the United States.

**B.    Jury Instructions**

Xiang alleges that the jury instructions for the § 924(c) charges were

erroneous. Section 924(c) criminalizes conduct by "any person who, during and in relation

to any crime of violence . . . uses or carries a firearm, or who, in furtherance of any such

crime, possesses a firearm." Xiang contends that when instructing the jury, the trial judge

must, consistent with the statute, separate the "use" and "carry" conduct and the "during

and in relation to" standard of participation, from the "possession" conduct and the "in

furtherance of" standard of participation. Xiang alleges that the jury instructions for the

§ 924(c) charges erroneously equated the stricter "in furtherance of" standard of

participation with the less strict "during and in relation to" standard. Xiang's argument

lacks merit.

As an initial matter, Xiang failed to raise this argument during either his

2005 or 2008 direct appeal and is therefore barred from raising it in this motion, unless he

can show cause for this failure. Bousley, 523 U.S. at 622. Xiang claims that his failure to

raise the issue on appeal is a result of ineffective assistance of appellate counsel. Ineffective

assistance of appellate counsel may constitute cause for a procedural default, Edwards v.

Carpenter, 529 U.S. 446, 451 (2000), and is evaluated under the two-pronged test of

Strickland v. Washington.[1]  466 U.S. 668 (1984).  Under Strickland, Xiang must show, first,

that appellate counsel committed errors so serious as to be objectively unreasonable and,

second, that the result of the proceeding would likely have been different in the absence of

counsel's errors.  Id. at 687-88, 694; Wiggins v. Smith, 539 U.S. 510, 520-21 (2003).  Xiang

must overcome a strong presumption that counsel rendered adequate assistance and

exercised reasonable professional judgment.  Strickland, 466 U.S. at 688.

            Xiang cannot demonstrate that his appellate counsel was constitutionally

ineffective, and thus cannot excuse his failure to raise a challenge to the court's jury

instructions in his direct appeal.  "Appellate counsel does not have a duty to raise all

colorable claims on appeal; rather, counsel should use reasonable discretion to determine

which claims constitute a defendant's best arguments for obtaining a reversal of a

conviction."  Forte v. LaClair, 354 F. App'x 567, 569 (2d Cir. 2009).  Because Xiang's trial

counsel did not object to the jury instructions at trial, any error in the instructions would

have been reviewed by the Second Circuit for plain error that affected a substantial right.

See Fed. R. Crim. P. 30(d) ("Failure to object [to a jury instruction] in accordance with this

rule precludes appellate review, except as permitted under Rule 52(b).");  Fed. R. Crim. P.

52(b) ("A plain error that affects substantial rights may be considered even though it was

not brought to the court's attention.").  However, for the reasons discussed below, the jury

instructions were not erroneous, and even if they were, any error was harmless.  Thus it

would have been meritless for Xiang's counsel to raise the issue on appeal.  United States v.

---

[1]      Strickland, though originally applied to ineffective assistance of trial counsel claims,
"applies equally to claims of ineffective assistance of appellate counsel."  Aparicio v. Artuz,
269 F.3d 78, 95 (2d Cir. 2001).

Arena, 180 F.3d 380, 396 (2d Cir. 1999) ("Failure to make a meritless argument does not amount to ineffective assistance.").

The alleged errors in Xiang's jury instructions do not rise to a level of constitutional error and thus are not grounds for habeas relief.  Davis v. Strack, 270 F.3d 111, 123 (2d Cir. 2001) ("The question is not whether the trial court gave a faulty instruction, but rather 'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'"  (quoting Cupp v. Naughten, 414 U.S. 141, 147 (1973))).

Xiang attacks three sections of the jury instructions.  The first contested section of the jury instructions reads:

> The second element that the government must prove beyond a reasonable doubt on each count is that the defendant you are considering knowingly used or carried a firearm during and in relation to the commission of, or that that defendant in question possessed a firearm in furtherance of, the underlying crime of violence . . . .

Trial Tr., May 29, 2003, at 676 (Doc. No. 63).  Xiang contends that this instruction erroneously equated the "in furtherance of" standard of participation with the "during and in relation to" standard.

Contrary to Xiang's contention, this instruction accurately tracks the language of the statute.  Section 924(c) criminalizes conduct by "any person who, during and in relation to any crime of violence . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm."  Consistent with the statute, the jury instruction grouped the "use" and "carry" conduct with the "during and in relation to" standard of participation; the instruction also grouped the "possession" conduct and the "in furtherance of" standard of participation.  18 U.S.C. § 924(c).

9

Xiang also asserts that the jury instructions erroneously described the "use"

prong of § 924(c).  The relevant section of the jury instructions reads:

> To prove the use of the firearm, the government must prove an
> active employment of the firearm by that defendant.  This does
> not mean that the defendant in question must actually fire or
> attempt to fire the weapon, although those would obviously
> constitute use of the weapon.  Brandishing, displaying, or even
> referring to the weapon open others present knew that the
> defendant you are considering has the firearm available if
> needed, both constitute use of the firearm. [2]  However, the
> mere possession of a firearm at or near the site of the relevant
> crime without active employment as I've just described it is not
> sufficient to constitute use of the firearm.

Trial Tr. at 676-77.

This instruction is consistent with the Supreme Court's interpretation of the

"use" of a firearm in the context of § 924(c).  In <u>Bailey v. United States</u>, the Court

interpreted the "use" conduct of § 924(c) to "connote more than mere possession of a

firearm by a person who commits a drug offense."  516 U.S. 137, 143 (1995).  Rather, "use"

requires "active employment of the firearm by the defendant, [one] that makes the firearm

an operative factor in relation to the predicate offense."  <u>Id.</u>  Consistent with this standard,

the trial court instructed the jury that "the mere possession of a firearm at or near the site

of the relevant crime without active employment . . . is not sufficient to constitute use of the

firearm."  Trail Tr. at 677.  The instruction was not erroneous.

Finally, Xiang asserts that the jury instructions erroneously described the

"carry" prong of § 924(c). The relevant section of the jury instructions reads:

---

[2]     The jury instructions are reproduced verbatim from the trial transcripts, including
grammatical errors.  A fair reading of this sentence would be: Brandishing, displaying, or
even referring to the weapon so that others present knew that the defendant you are
considering has the firearm available if needed, both constitute use of the firearm.

> To prove that the defendant in question carried the firearm,
> the government must prove that the defendant had the weapon
> within his control in such a way that it furthered, or was an
> integral part of, the commission of the relevant crime of
> violence.  The defendant does not need to hold the firearm
> physically, have actual possession on his person.  If you find
> that he had dominion or control over the firearm's location,
> and had the power and intention to exercise that control, and
> that the firearm was immediately available to him in such a
> way that it furthered the commission of the relevant crime of
> violence, you may find that the defendant has proven that the
> defendant in question carried the weapon.

Trial Tr. at 677. Xiang argues the use of the word "furthered" in the instruction

erroneously equates the "in furtherance of" and "during and in relation to" standards of

participation.

This argument lacks merit.  The trial court's use of the word "furthered" is

consistent with the Supreme Court's decision in Muscarello v. United States, which held

that Congress used the phrase "during and in relation to" in order "to prevent prosecution

where guns played no part in the crime." 524 U.S. 125, 137 (1998).  Hence, the trial court's

explanation of the "carry" prong logically included an instruction requiring that the

carried gun played some part in the crime.

Moreover, even if the instruction does erroneously equate the two standards,

then any error was harmless because the standard used by the court, the "in furtherance

of" standard, is considered the stricter of the two standards.  Xiang correctly notes that the

phrase "in furtherance of," requires the government to prove a greater level of

participation by the defendant in the commission of the crime than does "during and in

relation to."  United States v. Gamboa, 439 F.3d 796, 810 (8th Cir. 2006) ("We conclude

that the language 'in furtherance of' requires a slightly higher standard of participation

than the language 'during and in relation to,' such that 'during and relation to' is

11

encompassed by the broader language 'in furtherance of.'"); United States v. Combs, 369 F.3d 925, 933 (6th Cir. 2004) ("[W]e conclude that 'in furtherance of' differs from 'during and in relation to' and requires the government to prove a defendant used the firearm with greater participation in the commission of the crime . . . ."); United States v. Iiland, 254 F.3d 1264, 1274 (10th Cir. 2001) ("The legislative history of the 1998 amendments directs that the 'in furtherance' requirement for possession is an even higher standard [than the 'during and in relation to' standard]."); United States v. Fleurissaint, 03 Cr. 906 (RRP), 2005 U.S. Dist. LEXIS 758, at *11 (S.D.N.Y. Jan. 21, 2005) ("Courts have recognized that the 'in furtherance of' requirement of the statute is by congressional design more stringent than the 'during and in relation to' standard.").[3] The more stringent standard would have required the jury to find Xiang guilty of a higher level of participation than would have otherwise been required and therefore rendered any error harmless beyond a reasonable doubt.[4] Chapman v. California, 386 U.S. 18, 24 (1967).

## C. Mandatory Consecutive Sentences

Xiang challenges on two grounds the trial court's imposition of mandatory consecutive sentences for his § 924(c) convictions. First, Xiang argues that in Deal v.

---

[3] The Second Circuit has yet to hold that the "in furtherance of" standard requires a greater level of participation than the "during and in relation to" standard.

[4] Xiang challenges the constitutionality of this aspect of the jury instructions for the first time on collateral review. It is an open question in the Second Circuit whether, when jury instructions are being evaluated for the first time on collateral review for a constitutional defect, the more deferential Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) standard of harmless error applies, or the more stringent Chapman v. California, 386 U.S. 18, 24 (1967) standard of harmless error applies. Santana-Madera v. United States, 260 F.3d 133, 140 (2d Cir. 2001). In this case, the alleged error is harmless under the more stringent Chapman standard and thus is also harmless under the Brecht standard. See Romero v. United States, 118 F. App'x 528, 530 (2d Cir. 2004).

United States, the Supreme Court wrongly decided that the mandatory sentence enhancements of § 924(c)(1) for "second or subsequent conviction[s]" are applicable to a defendant convicted of multiple § 924(c) counts in a single indictment.  508 U.S. 129 (1993). Second, Xiang argues that after his conviction and sentencing, an intervening change in Second Circuit law has removed the requirement that his sentences pursuant to § 924(c) be imposed consecutively.  Neither argument has merit.

Xiang was charged in a single indictment with four counts of violating § 924(c), and ultimately convicted of three of those counts.  For Count Six, which concerned the 21 Eldridge Street robbery, he was sentenced to 84 months imprisonment, pursuant to § 924(c)(1)(A)(ii), for brandishing a firearm during and in relation to a crime of violence. For Counts Nine and Twelve, which concerned the 109 East Broadway and 85 Allen Street robberies respectively, he was sentenced to two 150-month terms, pursuant to § 924(c)(1)(C)(i)[5] for second or subsequent convictions.  Furthermore, § 924(c)(1)(D)(ii) provides that "no term of imprisonment imposed . . . under this subsection shall run concurrently with any other term of imprisonment."  Therefore, Xiang was sentenced to 684 months imprisonment for his three § 924(c) convictions and to 70 months imprisonment for his underlying robbery and conspiracy to commit robbery convictions, which were to be served consecutively, resulting in an aggregate sentence of 754 months.

---

[5]     18 U.S.C. § 924(c)(1)(C) reads:

> In the case of a second or subsequent conviction under this subsection, the person shall—
>> (i) be sentenced to a term of imprisonment of not less than 25 years.

13

In United States v. Deal, the defendant was charged in a single indictment with multiple counts of violating § 924(c).  954 F.2d 262, 262 (5th Cir. 1992).  At trial, Deal was found guilty of six counts of violating § 924(c) and sentenced to 105 years imprisonment.  Id.  On appeal to the Fifth Circuit, Deal argued that he was improperly sentenced under the enhanced sentencing provision of § 924(c)(1)(C) because his convictions stemmed from a single indictment, and thus, Deal argued, the convictions were not "second or subsequent conviction[s]" within the meaning of the statute.  Deal, 954 F.2d at 263.  The Fifth Circuit denied Deal's appeal.  Id.  The Supreme Court affirmed and held that Deal was subject to the enhanced sentencing requirements of § 924(c)(1)(C) for all but one of those convictions.  Deal v. United States, 508 U.S. at 132, 137.  The Court reasoned "that 'conviction' refers to the finding of guilt by a judge or jury that necessarily precedes the entry of final judgment of conviction," and therefore the enhanced sentencing requirements for a second or subsequent conviction apply when a defendant is charged with different crimes in multiple counts in a single indictment.  Id. at 132 (quoting 18 U.S.C. § 924(c)(1)(C)).

Xiang contended in his 2008 direct appeal that the Supreme Court's reading of § 924(c) is incorrect.  Xiang argued that the enhanced sentencing requirements for a second or subsequent conviction apply only to a conviction for a crime committed after the defendant has been found guilty of a prior § 924(c) conviction and not when a defendant is charged with multiple counts in a single indictment.  As the Second Circuit noted on his 2008 direct appeal, "Xiang concedes that this argument is foreclosed by Deal v. United States, but he raises it to preserve it."  Zhou, 268 F. App'x at 141 (internal citations

omitted).  The Supreme Court declined to grant Xiang's writ of certiorari and <u>Deal</u> remains controlling precedent.

Xiang raises the same argument in this habeas motion.  However, because he raised this issue on direct appeal, he is foreclosed from relitigating it in this proceeding. <u>United States v. Perez</u>, 129 F.3d 255, 260 (2d Cir. 1997).  The Supreme Court has declined to reconsider <u>Deal</u>, and there has been no intervening change in law which would allow me to reconsider Xiang's sentence.  <u>See Chin</u>, 622 F.2d at 1092.

Xiang also argues that there has been, since his conviction and sentencing, an intervening change in Second Circuit law which has removed the requirement that his sentences pursuant to § 924(c)(1) be imposed consecutively.  Xiang specifically points to the Second Circuit decisions <u>United States v. Whitley</u>, 529 F.3d 150 (2d Cir. 2008) and <u>United States v. Williams</u>, 558 F.3d 166 (2d Cir. 2009).  Xiang argues that, had <u>Whitley</u> and <u>Williams</u> been decided prior to his sentencing, he would have been sentenced to less than 754 months.  This claim lacks merit.

In <u>Whitley</u>, the Second Circuit held that the mandatory minimum sentences under § 924(c)(1) were inapplicable to a defendant who was subject pursuant to § 924(e) to a longer mandatory minimum sentence for a career criminal firearm possession violation. 529 F.3d at 152-53.  The court's holding was based on its reading of the first clause of § 924(c)(1)(A) which, the court held, renders the enhanced sentencing requirements of § 924(c) inapplicable when "a greater minimum sentence is otherwise provided by this subsection or by any other provision of law." [6]  <u>Whitley</u>, 529 F.3d at 153.  The defendant in

---

[6]      18 U.S.C. § 924(c)(1)(A) reads:

Whitley was subject to a 15-year mandatory minimum sentence pursuant to § 924(e) for

being an armed career criminal.  Id.  Since this mandatory minimum was greater than the

10-year mandatory minimum required under § 924(c), the first clause of § 924(c)(1)(A)

precluded the court from imposing both sentences.  Id.

            In Williams, the Second Circuit expanded its holding in Whitley.  The court

held that the mandatory minimum sentences under § 924(c) were inapplicable not only

when the defendant was subject to a longer mandatory minimum sentence pursuant to

another subsection of § 924, but also when the defendant was subject to a "longer minimum

sentence for a [predicate] offense that is part of the same criminal transaction or operative

set of facts as the firearm offense."  Williams, 558 F.3d at 168.  The defendant in Williams

was subject to a 10-year mandatory minimum sentence pursuant to 21 U.S.C.

§ 841(b)(1)(A) for drug trafficking and subject to a 5-year mandatory minimum sentence

pursuant to § 924(c) for possession of a firearm in furtherance of that drug trafficking

---

> Except to the extent that a greater minimum sentence is
> otherwise provided by this subsection or by any other
> provision of law, any person who, during and in relation to any
> crime of violence or drug trafficking crime (including a crime
> of violence or drug trafficking crime that provides for an
> enhanced punishment if committed by the use of a deadly or
> dangerous weapon or device) for which the person may be
> prosecuted in a court of the United States, uses or carries a
> firearm, or who, in furtherance of any such crime, possesses a
> firearm, shall, in addition to the punishment provided for such
> crime of violence or drug trafficking crime—
>
> > (i) be sentenced to a term of imprisonment of not less than 5
> > years;
> >
> > (ii) if the firearm is brandished, be sentenced to a term of
> > imprisonment of not less than 7 years; and
> >
> > (iii) if the firearm is discharged, be sentenced to a term of
> > imprisonment of not less than 10 years.

16

crime. Williams, 558 F.3d at 167. The court held that the first clause of § 924(c)(1)(A) precluded the consecutive imposition of the § 924(c) mandatory minimum sentence because the gun charge arose from an underlying drug trafficking crime whose mandatory minimum sentence qualified as a "greater minimum sentence . . . provided by . . . any other provision of law." Id. at 167-68.

Thus, both Whitley and Williams render inapplicable the mandatory minimum sentences of § 924(c) only where a defendant is subject to a longer mandatory minimum sentence pursuant either to another subsection of § 924 or pursuant to the predicate crime of violence or drug trafficking offense. Xiang, however, was subject to no mandatory minimum sentences other than those required by § 924(c). Therefore, Whitley and Williams are inapposite and would not have altered Xiang's sentence had they been decided prior to his sentencing.

### IV.    CONCLUSION

For the reasons stated, the petition for a writ of habeas corpus is denied. Since Xiang has not made a substantial showing of the denial of a constitutional right, I decline to issue a certificate of appealability. 28 U.S.C. § 2253(c)(2); Rhagi v. Artuz, 309 F.3d 103, 106 (2d Cir. 2002).

The Clerk shall mark the case closed.

SO ORDERED.

Dated:        August 6, 2010
              New York, New York

                                          ALVIN K. HELLERSTEIN
                                          United States District Judge